IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BISHARA BRAZIEL and LAMONT GEORGE, *as Co-Personal Representatives of the Estate of Daimere S. George*,<br><br>Plaintiffs,<br><br>vs.<br><br>NOVO Development Corporation, *d/b/a* NOVO Properties,<br><br>Defendant. | No. 2:17-cv-03244-DCN<br><br>**ORDER** |

This matter is before the court on defendant Novo Development Corporation's ("NOVO") motion for summary judgment, ECF No. 50. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This case arises out of the accidental drowning of three-year-old Daimere S. George ("decedent") in the swimming pool of South Pointe Apartments ("South Pointe") at 6220 North Murray Avenue in Hanahan, South Carolina. At the time of the incident, NOVO was the owner and operator of South Pointe. Plaintiffs Bishara Braziel ("Braziel") and Lamont George ("George") (together, "plaintiffs") allege that on May 18, 2016, NOVO was preparing for the pool opening in June and left gates and access points to the pool unlocked, unsecure, opened, and/or left the pool in such a condition that enable decedent to gain entry to the pool. That day, decedent was found face down in the pool; he died on May 25, 2016.

Plaintiffs filed suit on December 1, 2017, bringing causes of action for wrongful death pursuant to S.C. Code § 15-51-10 and survival action pursuant to S.C. Code 15-5-90. Plaintiffs allege that decedent's death was proximately caused by NOVO's negligent, negligent per se, grossly negligent, careless, willful, wanton, and reckless conduct. On January 7, 2019, NOVO filed the instant motion for summary judgment. ECF No. 50. On January 22, 2019, plaintiffs filed their response. ECF No. 56. The motion is ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party. Id. at 255.

## III.   DISCUSSION

NOVO asks the court to grant summary judgment on both of plaintiffs' claims, arguing that because the fence surrounding the pool did not violate the requirements of applicable building codes, NOVO neither created nor had notice of an unsafe or hazardous condition.  The court disagrees with NOVO's position.

Property owners owe a duty of care to those on their property.  Larimore v. Carolina Power & Light, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000).  This duty varies depending on whether they are adult trespassers, invitees, licensees, or children.  Id.  In 2007, the Supreme Court of South Carolina adopted § 339 of the Restatement (Second) of Torts as the state's official law for premises liability cases involving children.  Henson ex rel. Hunt v. Int'l Paper Co., 650 S.E.2d 74, 81 (S.C. 2007).  Section 339 provides that

> [a] possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (1965).

As plaintiffs point out, NOVO does not mention this standard in its motion for summary judgment.  Rather, NOVO's arguments revolve solely around whether certain building codes relied upon by plaintiffs' expert witness actually applied to South Pointe

at the time of decedent's drowning. Alan Campbell ("Campbell"), plaintiffs' expert witness, relied on the following three building codes, among other things, in formulating his opinion: (1) the 2012 International Building Code ("2012 IBC"); (2) the 2012 International Property Maintenance Code ("2012 IPMC"); and (3) the 2012 International Swimming Pool and Spa Code ("2012 ISPSC"). ECF No. 59-1, Campbell Redlined Report at 9.

Campbell's expert report and deposition testimony identify two flaws in the pool's enclosure—gates that did not self-latch and a brick fence with holes that were too wide. Specifically, there are "four access gates built into the brick enclosure surrounding the pool area." Id. at 5. Three of these are wrought iron gates that are not self-latching. Id. The fourth is a wooden gate with a keypad and is used by residents when the pool is open; Campbell did not specify whether this gate self-latches but does not contend that decedent entered the pool area through this gate. Id. Campbell also noted that the pool is surrounded by a brick enclosure with openings between the bricks measuring about three inches wide and four inches high. Id. at 3. Plaintiffs argue that decedent gained access to the pool either through a non-self-latching gate which had been left open or by climbing the fence using the spaces in the brick. ECF No. 56 at 6.

Campbell's report compares the state of the pool's fence and gates to the three aforementioned building codes. First, his report addresses the 2012 IBC, which he admitted was not enforced by Hanahan at the time of the drowning. ECF No. 50-2, Campbell Dep. 79:8–18. The 2012 IBC requires that "fence or screen enclosures shall be equipped with self-closing and self-latching gates" and that "spacing within the cutouts

4

[of the fence] shall not be greater than 1.75 inches in width." ECF No. 59-1, Campbell Redlined Report at 8 (quoting 2012 IBC §§ 3109.3 and 3109.4.1.3).

Next, he turns to the 2012 IPMC, which had been adopted and enforced by the City of Hanahan at the time of the incident and which requires that "[e]xisting structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein." Id. at 9 (quoting 2012 IPMC § 101.3). Campbell reported that the 2012 IPMC requires that "[g]ates and doors in such barriers shall be self-closing and self-latching." Id. (quoting 2012 IPMC § 303). Campbell's report does not discuss whether the IPMC has requirements for the size of cutouts or spaces within the fence surrounding the pool.

Finally, Campbell addresses the 2012 ISPSC, which, like the 2012 IBC, was not enforced by Hanahan at the time of the drowning. ECF No. 50-2, Campbell Dep. 90:21–91:2. "Similar to the requirements found in [ ] the IBC, subsection 305.2.5 of the ISPSC requires that spacing between vertical members and within decorative cutouts not exceed 1.75 inches." ECF No. 59-1, Campbell Redlined Report at 9. The 2012 ISPSC also requires that "pedestrian access gates . . . shall be self-closing and have a self-latching device" and that "gates not intended for pedestrian use, such as utility or service gates, shall remain locked when not in use." Id. at 9–10 (quoting 2012 ISPSC §§ 305.3).

Campbell noted that "[w]hile the 2012 editions of the IBC and ISPSC were not fully enforceable at the time of the incident, they would be considered applicable industry standards related to the design of safety features for the pool." Id. at 11. Campbell concluded that "the drowning and death of [decedent] was a direct result of the lack of compliance with regulations and industry standards related to the gate at the pool at South

5

Point" and that "the brick enclosure [around the pool] afforded climbing and would have allowed [decedent] to access the pool even if the gate near the pump house was locked." Id. at 13.

NOVO argues that the court should grant summary judgment "because the barrier surrounding the subject pool did not violate the requirements of the applicable building codes," and therefore NOVO "neither created nor had notice of any unsafe or hazardous condition." ECF No. 50 at 17. NOVO is concerned by Campbell's attempt to "conflate" the 2012 IPMC, which is applicable, with the inapplicable 2012 IBC and 2012 ISPSC. ECF No. 50 at 9. According to NOVO, Campbell's report improperly argues that NOVO's alleged violation of the 2012 IBC and 2012 ISPSC's size requirements for gaps within the brick enclosure created a dangerous condition in violation of the 2012 IPMC's broader mandate that entities like South Pointe Apartment maintain a "minimum level of health and safety." 2012 IPMC § 101.3. NOVO contends that it is inappropriate for Campbell to "shoehorn" these inapplicable provisions of the 2012 IBC and 2012 ISPSC regarding the fence gaps into his expert opinion through generic terminology about safety in the 2012 IPMC. ECF No. 50 at 4. Further, NOVO argues that since it never received any citations for these purported violations of the building codes, it was never put on notice of any alleged unsafe or hazardous condition.

First, the court is unsure whether NOVO is asking for summary judgment merely on plaintiffs' negligence per se claims or on all of plaintiffs' claims. With all of its references to the building codes, the motion for summary judgment reads as an attempt to obtain summary judgment on a negligence per se claim. A negligence per se claim obviously cannot survive if it is based on an inapplicable code or regulation, but NOVO

6

has neither presented any law or arguments on plaintiffs' negligence per se claims nor mentioned "negligence per se" at all in its motion. The complaint enumerates 37 allegations of NOVO's negligence, and only two of these reference "regulations, ordinances, [or] codes." ECF No. 1 ¶ 21(w)–21(x). The remaining allegations relate to general negligence, gross negligence, willfulness, wantonness or recklessness in breaching the duty owed to decedent. Plaintiffs may still prevail under Restatement § 339 even if the negligence per se claims fail.

Turning to plaintiffs' claims of NOVO's negligence and recklessness in regards to the standard of safety required by landowners towards children under § 339, the court is unsure how NOVO would like it to apply its arguments about the inapplicable codes—2012 IBC and 2012 ISPSC—to the five elements that plaintiffs must prove under § 339. Is NOVO asking the court to find that Campbell cannot rely at all upon the inapplicable codes to opine about industry standards and whether NOVO breached those standards by failing to update its gate and fence around the pool?[1] If so, is NOVO arguing that, without expert testimony about NOVO's violation of industry standards, plaintiffs are unable to prove their case under § 339? If so, which particular elements of § 339 are they unable to prove and why? Because of the manner in which NOVO constructed its motion for summary judgment, the parties have not presented arguments about the role that Campbell's testimony plays in determining whether the "burden of eliminating" the

---

[1] NOVO contends that Campbell has offered nothing to support his claims that the 2012 IBC and 2012 ISPSC constitute industry standards for safe conditions of a swimming pool or that he is qualified to opine about them. However, NOVO provides no further reasoning to as to why Campbell cannot rely on the 2012 IBC and the 2012 ISPSC to testify regarding industry standards for pool safety. ECF No. 50 at 4. Additionally, the court has already denied NOVO's motion to exclude or limit Campbell's testimony. ECF No. 51.

pool's danger was "slight compared with the risk to children" or whether NOVO "fail[ed] to exercise reasonable care to eliminate the danger or otherwise to protect the children." Restatement (Second) or Torts § 339(d)–(e). The court will not engage in conjecture about a party's intent or argument, nor will it grant summary judgment on grounds that have not been raised by the moving party.[2]

NOVO cites Kauffman v. Park Place Hosp. Grp., 2011 WL 1335832, at *1 (D.S.C. Apr. 7, 2011), aff'd, 468 F. App'x 220 (4th Cir. 2012), in support of its argument that Campbell may not rely upon inapplicable building codes. The plaintiff in Kauffman was injured after he fell while walking down the ramp at the entrance to the hotel in Charleston, S.C. where he was a guest. There was no railing at the end of the ramp where he fell. He brought a negligence cause of action against the hotel, alleging that the hotel breached its duty of care to him, an invitee, by failing to update the ramp's handrail to comport with the 2003 International Property Maintenance Code ("2003 IPMC"). The 2003 IPMC had not been adopted by Charleston, and the court found that the inapplicable code did not create a duty for the hotel to comply with the 2003 IPMC's terms. The Fourth Circuit affirmed, finding that the applicable building code did not require handrail extensions and that the plaintiff "did not show that [defendants] otherwise had a duty to alter the ramp's handrail." Kauffman v. Park Place Hosp. Grp., 468 F. App'x 220, 221–22 (4th Cir. 2012).

---

[2] Moreover, the court finds that plaintiffs have presented sufficient evidence from which a jury could determine that that one of the non-self-latching gates was left open, allowing decedent to access the pool. Based on Campbell's testimony regarding the 2012 IPMC's requirements for self-latching gates, it is inappropriate to grant summary judgment on the entirety of plaintiffs' claims when there is a dispute of fact regarding one of the theories underlying plaintiffs' negligence claims.

Notably, Kauffman involved a premises liability action brought by an invitee and required the plaintiff to prove breach of a duty to an invitee, not breach of the standard of care owed to a child under Restatement § 339. The plaintiff in Kauffman failed to demonstrate that the hotel owed him any duty beyond complying with applicable building codes. However, the language of § 339 indicates that a property owner might still be liable for injuries sustained by a child on the owner's land—and might "otherwise ha[ve] a duty to alter" the dangerous condition—even if the property complies with applicable building codes. Kauffman does not foreclose plaintiffs from relying on various international standards for buildings and pools to argue that NOVO's property fell short of industry standards for safety.

NOVO opens its motion for summary judgment by arguing that "because the barrier surrounding the subject pool did not violate the requirements of applicable building codes, [NOVO] neither created nor had notice of any unsafe or hazardous condition" and that as a result, "no genuine issue of material fact exists and defendant is entitled to summary judgment as a matter of law." ECF No. 50 at 1. NOVO appears to be relying on language applicable to general premises liability to invitees, rather than the more nuanced standard for duty to children under § 339. Traditional arguments about the standard of care owed to invitees under a negligence cause of action cannot be applied so easily to standards of care owed to children, and a motion for summary judgment on a negligence against involving harm to children requires a defendant to address the elements of § 339.

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** the motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 26, 2019
Charleston, South Carolina**