IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| BISHARA BRAZIEL and LAMONT GEORGE, *as Co-Personal Representatives of the Estate of Daimere S. George*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:17-cv-03244-DCN |
| vs. | ) ) ) | **ORDER** |
| NOVO Development Corporation, *d/b/a* NOVO Properties, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on the supplemental briefing submitted by the parties to help the court determine which legal standard to apply in this case. For the reasons set forth below, the court finds as a matter of law that: (1) Daimere S. George ("Daimere") was a child trespasser; (2) defendant NOVO Development Corporation, d/b/a NOVO Properties ("NOVO") owed Daimere a duty of care in accordance with the principles of § 339 of the Restatement (Second) of Torts; and (3) comparative negligence is not a viable defense in this context.

## I. BACKGROUND

This case arises out of the accidental drowning of three-year-old Daimere in the swimming pool of South Pointe Apartments ("South Pointe") at 6220 North Murray Avenue in Hanahan, South Carolina. At the time of the incident, NOVO was the owner and operator of South Pointe. Plaintiffs Bishara Braziel ("Braziel") and Lamont George ("George") (together, "plaintiffs") allege that on May 18, 2016, NOVO was preparing for the pool opening in June and left gates and access points to the pool unlocked, unsecured,

1

opened, and/or left the pool in such a condition that enabled Daimere to gain entry to the pool. That day, Daimere was found face down in the pool; he died on May 25, 2016. Plaintiffs filed suit on December 1, 2017, bringing causes of action for wrongful death pursuant to S.C. Code § 15-51-10 and survival action pursuant to S.C. Code 15-5-90. Plaintiffs allege that Daimere's death was proximately caused by NOVO's negligent, negligent per se, grossly negligent, careless, willful, wanton, and reckless conduct.

On June 19, 2019, the court held a hearing on the parties' motions in limine, in preparation for the upcoming trial. Before this hearing, the only dispositive motion that had been filed was NOVO's motion for summary judgment, in which NOVO argued that plaintiffs could not succeed in their negligence claim because plaintiffs' purported expert should not be allowed to testify regarding inapplicable building codes. ECF No. 50. In their response, plaintiffs argued that the motion for summary judgment should be denied because NOVO did not address Restatement § 339, which they contended is the applicable law in this case. ECF No. 56. Plaintiffs did not file a reply contesting the applicability of § 339; this, in addition to the South Carolina Supreme Court's adoption of § 339 as the law that should control premises liability cases involving trespassing children, led the court to assume that § 339 was the relevant law in this case. The court denied NOVO's motion for summary judgment, partly due to NOVO's failure to address § 339. ECF No. 65. At the June 19 hearing, the court learned for the first time that NOVO disputed the applicability of § 339. Instead, NOVO planned to rely on general negligence principles at trial and expressed its desire to introduce evidence that

Daimere's caretakers negligently failed to properly supervise him and that this comparative negligence caused his death.[1]

The court ordered supplemental briefing on these issues to help the court determine in advance of trial what law to rely on when charging the jury. NOVO filed its brief on June 25, 2016. ECF No. 95. Plaintiffs filed their response to NOVO's brief on June 26, 2019. ECF No. 96. NOVO filed its reply on June 27, 2019. ECF No. 97. The court has considered all of the parties' arguments and sets forth its finding below.

## II. DISCUSSION

### A. Status of Daimere

Plaintiffs have alleged, among other things, that NOVO's negligence caused the drowning death of Daimere in the pool at South Pointe. In order to bring a successful negligence claim, a plaintiff must demonstrate that "(1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages." Doe v. Marion, 645 S.E.2d 245, 250 (S.C. 2007). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 81 (S.C. 1998). The existence and scope of the duty are questions of law for the courts. Miller v. City of Camden, 451 S.E.2d 401, 403 (S.C. Ct. App. 1994), aff'd as modified, 494 S.E.2d 813 (S.C. 1997); Roe v. Bibby, 763 S.E.2d 645, 648 (S.C. Ct. App. 2014).

---

[1] The court notes that NOVO did raise comparative negligence as an affirmative defense in its Answer.

In a premises liability action, the nature and extent of the duty a landowner owes to a person depends on the person's status. Sojourner v. AutoZone Stores LLC, 2018 WL 6065381, at *2 (D.S.C. Nov. 20, 2018). "South Carolina recognizes four general classifications of persons present on the property of another: adult trespassers, invitees, licensees, and children." Singleton v. Sherer, 659 S.E.2d 196, 204 (S.C. Ct. App. 2008). The level of care owed is dependent upon the class of the person present. Larimore v. Carolina Power & Light, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000). In 2007, the Supreme Court of South Carolina adopted § 339 of the Restatement (Second) of Torts as the state's official law for premises liability cases involving children trespassing. Henson ex rel. Hunt v. Int'l Paper Co., 650 S.E.2d 74, 81 (S.C. 2007). Section 339 provides that

> [a] possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (1965).

The first question before the court is what status Daimere occupied at the time of his drowning, as it will inform how the court will instruct the jury regarding NOVO's legal duty to Daimere. NOVO argues that Daimere was licensee, because he was a social

4

guest of his grandmother and aunt, who were residents at South Pointe.[2] Accordingly, NOVO contends that it should only be liable for Daimere's death if a jury finds the "condition" to be "unreasonably dangerous and if [NOVO did] not exercise due care to prevent the injury." ECF No. 92 at 4 (quoting McLendon v. Hampton Cotton Mills Co., 109 S.C. 238 (S.C. 1917) ("one who creates upon his own premises a thing which is naturally attractive to children and at the same time dangerous to them, . . . should anticipate their childish proclivities and exercise reasonable care to safeguard them from injury that otherwise would probably result"). In establishing the rule of "reasonable care" owed to children in McLendon, the South Carolina Supreme Court sought to avoid imposing "unreasonable burdens or liabilities upon the owner of occupier of land" and to avoid making the owner "an insurer of the safety of his neighbors' trespassing children." McLendon, 109 S.C. 238. The court observes that, even though in 1917 the South Carolina Supreme Court established a standard of care for children that did not provide specific protections for children who are trespassing, South Carolina law on premises liability has developed over the last one hundred years. And in 2007, the South Carolina Supreme Court ruled that when a child is trespassing on property, the property owner or

---

[2] NOVO also argues that Daimere should be treated as a licensee rather than a child trespasser because the complaint alleges that "[a]t all relevant times, Decedent was properly and lawfully on the subject property." ECF No. 95 at 2 (citing Complaint ¶ 12). While the complaint does allege this, the complaint also distinguishes between the "subject property" and the "subject pool." Additionally, it is a question of law for the court to determine a status of the injury party and to decide how to instruct the jury regarding a property-owner's legal duty to that party. Based on the undisputed evidence before the court, it is clear that Daimere was trespassing at the subject pool and the area surrounding the pool when he entered the pool area and subsequently drowned. Thus, the court finds as a matter of law that he should be treated as a child trespasser at trial.

occupier's potential liability for harm caused to that child "by an artificial condition upon that land" is determined according to the elements of § 339.

Significantly, NOVO concedes that "the moment Daimere entered the pool area, his legal status changed to child trespasser." ECF No. 95 at 8. Yet according to NOVO, "because South Carolina law treats children the same whether they enter property with or without a license, the common law duty owed to Daimere did not change when he entered the pool area." Id. NOVO does not cite any law to support this contention, but presuming that NOVO is referring to law it cited earlier in its supplemental brief, the court has already addressed the developments in premises liability law that have culminated in the Henson court replacing the former common law duties with clear instructions that § 339 establishes the duties owed to children who are trespassing. A few sentences later, NOVO concedes that "if the duty owed to Damiere ever changed from the common law standard to the § 339 standard, it only did so once Daimere actually trespassed—when he breached the pool enclosure and stepped into the pool area." Id. "Even then," NOVO claims, "the South Carolina Supreme Court cautions that liability should not be imposed because [NOVO] took the reasonable measure to define the borders and safeguard the pool with a brick wall barrier." Id. (quoting Henson, 650 S.E. 2d at 81, n.7).

NOVO seems to be making two arguments here. First, NOVO appears to be arguing that, although Daimere was a child trespasser when he entered the pool area just before he drowned, because he was a licensee when he first arrived at South Pointe, the duty that NOVO owed to him as a licensee carried with him even when his status changed to that of a child trespasser. Or maybe NOVO is arguing that because its alleged

6

breach of duty relates to the insufficiency of its wall perimeter around the pool and because Daimere's status when he approached the perimeter was that of a licensee, the fact that he became a trespasser once he breached this perimeter is irrelevant. Either way, the court does not agree with this logic and finds that NOVO is trying to split hairs where there are no hairs to be split in an attempt to avoid conceding that § 339 should apply.

Second, NOVO argues in the alternative that, even should the court find that § 339 applies, NOVO is not liable because of the caveat offered in Henson footnote 7:

> As a final point of instruction, we specify that where a landowner defines the borders of his property or of an artificial condition on his property by fence or other barrier, and such fence or barrier is of a type that should reasonably be expected to exclude children or to place children on notice that their presence is not welcome, recovery for injuries to child trespassers should generally be precluded.

Henson, 650 S.E.2d at 81, n.7 (S.C. 2007). This argument is not pertinent to the question of what status to apply to Daimere but relates solely to liability. The question of whether NOVO's "fence or barrier [was] of a type that should reasonably be expected to exclude" Daimere or place him "on notice that [his] presence is not welcome" is a question for the jury, not for the court at this time.

The court's finding that Daimere was a child trespasser at the time when he suffered his injury is based on the facts of the case, which NOVO itself confirms are undisputed. ECF No. 95 at 8. The pool on NOVO's property was closed for the season to all residents and guests. Id. The pool had signs posted indicated that there should be no trespassing. Id. "It is further undisputed that Daimere accessed the pool without permission." Id. Based on these facts, the court finds that Daimere was a "child[] trespassing" within the meaning of § 339, and not a licensee, when the sustained "physical harm" from the "artificial condition upon" on NOVO's property. Rest. § 339.

### B. Comparative Negligence

Having determined that § 339 is the controlling law of the case, the court considers whether NOVO may assert the affirmative defense of comparative negligence at trial. See Nelson v. Concrete Supply Co., 399 S.E.2d 783, 784 (S.C. 1991) (officially adopting the "more equitable doctrine" doctrine of comparative negligence in place of contributory negligence); Bloom v. Ravoira, 529 S.E.2d 710, 713 (S.C. 2000) ("Ordinarily, comparison of the plaintiff's negligence with that of the defendant is a question of fact for the jury to decide."). NOVO seeks to introduce evidence showing that Daimere's grandmother and aunt, who were caring for him at the time he gained access to the pool, breached their duty to supervise him. NOVO argues that the jury should be allowed to consider whether they did breach this duty and whether the breach caused Daimere's injuries. The court disagrees.

First, South Carolina courts have found that, even though an actor assumes a duty to use care in respect to a child when he or she voluntarily undertakes that duty, parents and caretakers are not negligent "in simply failing to keep a constant and unremitting watch and restarting over their children, or over other children with whom their children were playing." Dennis by Evans v. Timmons, 437 S.E.2d 138, 141 (S.C. Ct. App. 1993). The court acknowledges that Dennis involved a slightly different set of facts than those before this court. In Dennis, a child named Randy was playing at the defendants' home with the defendants' children and with another child named Brock. The children were all playing with a screwdriver that they found at the defendants' home, and Randy tossed it at Brock, injuring him. The court found that defendants did not have a duty to

continuously be watching their children or Randy so unremittingly as to prevent these children from ever accidentally harming one another.

This court finds the principle in Dennis persuasive, even in the face of case law that recognizes that parents could have some duty of care to tend to their children in a reasonable manner to prevent injury to those children. NOVO has cited to one case that was brought by the parent of a child who had drowned in the defendant's pool, in which the court let jury to consider whether the parent was contributorily negligent.[3] Lynch v. Motel Enterprises, Inc., 151 S.E.2d 435, 437 (S.C. 1966). However, this case arose decades before the South Carolina Supreme Court established § 339 as the law governing premise liability cases regarding trespassing children. The court in Lynch was relying upon the pre-Henson premises liability law, and as such its value in the court's current analysis is diminished.

None of the premises liability cases subsequent to Henson's adoption of § 339 in 2007 address whether a defendant may assert the affirmative defense of comparative negligence in a § 339 case. Because there are no South Carolina cases on point, the court relies on the reasoning in Coe v. Schneider, 424 A.2d 1 (D.E. 1980), which is the only case the court has found that directly addresses this question. That case was brought on behalf of a three-year-old boy by his father to recover for the injuries the boy sustained after being kicked by a pony. On the day of the injury, the boy's parents were preparing to take a car ride with their son and directed him to wait for them at the top of the stairs leading from their second-floor apartment down to the apartment exit on the first floor.

---

[3] The court uses "contributory" instead of "comparative" negligence because at the time of Lynch, South Carolina still abided by the doctrine of contributory negligence.

As the boy's father came out of the apartment sometime later, he saw that his son was not waiting for them but was crossing the street to where the pony was tied up on the defendants' property. Before the father could reach his son, the pony had kicked the son in the head, causing partial paralysis of the son's left side. The father sued the owner and lessee of the land where the pony was tethered.

While the defendants prevailed at trial, on appeal the Delaware Supreme Court found it was an abuse of discretion and reversible error for the trial judge to refuse to "give a cautionary instruction to the jury that no act or omission on the part of either parent [ ] was material to the case . . . which is grounded upon Restatement of Torts (2nd) s 339." Coe, 424 A.2d at *2. The defendants argued that "the lack of proper parental supervision is relevant to the issues of proximate cause and foreseeability of the risk of trespassing children," but the Delaware Supreme court found that "given Delaware's adherence to the rule of [§] 339, under the facts of this case, parental supervision is immaterial to the question of the defendants' liability." Id. The court reasoned that § 339 is "predicated upon an artificial condition upon land where the possessor knows or has reason to know that children are likely to trespass" and which could "involve an unreasonable risk of death or serious bodily harm to trespassing children who do not discover or realize the risk." Id. In other words, as plaintiffs have articulated, "if parents or other adult supervisors were to be held liable for injuries suffered by children who strayed from their eyesight, § 339 would be unnecessary." ECF No. 67 at 9. The language and purpose of §339 logically precludes a comparative negligence affirmative defense, because § 339 exists to protect those young children who have trespassed upon land and encountered harmful artificial conditions, which they presumably would not be

able to do if they were under their parents' constant supervision.  Furthermore, as the Delaware Supreme Court noted, "[§] 339 and the official comments thereto do not make the possessor's liability contingent upon a showing that the child's trespass was not due to parental negligence in failing to properly supervise the child."  Coe, 242 A.2d at *2.

Based on this reasoning and the lack of any South Carolina law indicating that a comparative negligence charge should be allowed in a § 339 premises liability case, the court has determined that it will not instruct the jury at the upcoming trial on comparative negligence.  The court will not permit NOVO to argue that Daimere's parents or caretakers were negligent in failing to supervise him and that this negligence caused his death, nor will they be allowed to put forth evidence to that effect.

### III.  CONCLUSION

For the foregoing reasons the court finds that: (1) Daimere was a child trespasser; (2) NOVO owed Daimere a duty in accordance with the principles of Restatement § 339; and (3) comparative negligence is not a viable defense in this context.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**June 28, 2019
Charleston, South Carolina**